542

GEORGE J. ANNES, Plaintiff in Error, *vs.* CAROLAN, GRAHAM, HOFFMAN, INC., Defendant in Error.

*Opinion filed October 19, 1929—Rehearing denied Dec. 4, 1929.*

EMIL C. WETTEN, CHARLES H. PEGLER, PAUL N. DALE, and RICHARD H. MATHER, (JAMES P. HAFFNER, and GREYDON L. WALKER, of counsel,) for plaintiff in error.

JAY STOUGH, and GEORGE F. CAROLAN, for defendant in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

Plaintiff in error, George J. Annes, began an action of assumpsit in the superior court of Cook county against defendant in error, Carolan, Graham, Hoffman, Inc., to recover $2000 upon a binder of insurance for the loss of a diamond ring. At the close of the evidence the court directed a verdict in favor of plaintiff in error for $2000, and

judgment was entered accordingly. The Appellate Court for the First District reversed the judgment without remanding the cause and entered judgment in favor of defendant in error. The case comes to this court upon a writ of *certiorari*.

Plaintiff in error was engaged in the restaurant business in Chicago. Defendant in error was an insurance agent. On January 22, 1925, defendant in error issued to plaintiff in error a written instrument which was designated as a "binder for account of Underwriters at Lloyd's London." It recited that in consideration of $50, "Underwriters at Lloyd's London are bound to George J. Annes from twelve o'clock noon of January 22, 1925," for one year for $2187, for two diamonds and one watch, including a white diamond ring, 3⅝ carats, valued at $2000. The binder was signed by defendant in error by Jos. Penn Carolan. Endorsed on the binder was a provision that "it is hereby understood and agreed that the first $50 of each loss will be paid by the assured," which endorsement was signed by Lloyd's of London and defendant in error by Jos. Penn Carolan. Another clause signed by defendant in error provided that when the policy of the underwriters was issued in lieu of their undertaking under the binder and the same was delivered to the assured or his agents the obligation of the underwriters should cease, and that the binder might be canceled by the assured and by the underwriters by a five-day notice issued by Cannon, Carolan, Ringer, Inc., of Chicago, to the assured or his agents.

The declaration alleged that defendant in error, ostensibly acting for and on behalf of certain persons or corporations unknown to plaintiff in error and not disclosed in the policy, made its certain policy of insurance and delivered the same to plaintiff in error, a copy of which was attached to the declaration marked "Exhibit A" and made a part thereof to the same purpose as if written in full therein. It alleged that on August 23, 1925, the ring was stolen

from plaintiff in error; that plaintiff in error gave notice to defendant in error with full particulars of the loss, including the value of the ring, and that defendant in error refused to pay the loss.

To the declaration defendant in error filed seven pleas, substantially as follows: The general issue; that defendant in error did not make or sign the policy but in everything it did it acted as the agent of Lloyd's of London; that prior to the loss defendant in error and Cannon, Carolan, Ringer, Inc., issued a five-day notice to plaintiff in error and to his agent canceling the policy; that prior to the loss defendant in error sent plaintiff in error a letter canceling the policy, which letter was set out in full, and that plaintiff in error told defendant in error he knew his policy had been canceled and he asked to have the insurance placed elsewhere. Plaintiff in error to these pleas filed seven replications, as follows: A *similiter;* that although defendant in error acted as the agent of Lloyd's of London, yet Lloyd's of London, or Underwriters at Lloyd's London, were persons or corporations unknown to plaintiff in error; that the policy was not canceled; that defendant in error and Cannon, Carolan, Ringer, Inc., did not issue a five-day notice to plaintiff in error or his agent, and that the notice issued by Carolan, Graham, Hoffman, Inc., was ineffective because it was contrary to the provisions of the policy and because the unearned premium was not returned; and that plaintiff in error, upon the receipt of the instrument in writing, did not tell defendant in error that he knew that the policy had been canceled.

The Appellate Court based its decision solely upon the grounds that there was no evidence that defendant in error represented a principal who was not disclosed to plaintiff in error; that in the binder, wherever the insurance company was mentioned, it was referred to as Lloyd's of London, and there was no evidence to contradict the fact that defendant in error was the agent of Lloyd's of London;

that Lloyd's of London was bound by the binder and defendant in error was not bound; that Lloyd's of London was a body of underwriters with headquarters in London, England, known in insurance circles the world around, and it was idle, in the light of the undisputed facts, for plaintiff in error to claim that defendant in error was acting for an undisclosed principal.

The theory of plaintiff in error is that defendant in error is liable because it was acting for a partially undisclosed principal; that the Appellate Court did not make any findings of fact, as required by section 120 of the Practice act, and it will be deemed to have found the facts the same as the trial court; that the Appellate Court could not find any fact contrary to the finding of the trial court, because there was nothing in the record to sustain such a finding; that the finding of the trial court that the agent for the Underwriters at Lloyd's London was the agent of partially undisclosed principals was correct, and that the agent of the partially undisclosed principals was liable on the contract made for its principals.

Defendant in error contends that the binder imposed no liability on defendant in error; that there was no competent evidence under plaintiff in error's declaration even tending to show a cause of action; that the binder was canceled in accordance with its terms more than four months before the loss; and that even if plaintiff in error's theory of the law was correct, the trial court erred in directing a verdict because the evidence showed that plaintiff in error waived the return of the unearned premium, and such waiver was a question of fact for the jury.

Where an agent making a contract fully discloses the principal for whom he is contracting, the agent is not bound on the contract unless he makes himself liable expressly or by inference fairly drawn from all of the facts and circumstances in evidence. Where an agent makes a contract for a principal who is wholly or partially undisclosed the agent

is bound by the contract. *McDonald* v. *Bond,* 195 Ill. 122; *Millikin* v. *Jones, 77* id. 372; *Wheeler* v. *Reed,* 36 id. 81; 6 A. L. R. 649; 47 L. R. A. (n. s.) 232, 235, 236; 2 Am. & Eng. Ency. of Law, 623.

There is no conflict in the evidence with reference to the persons or corporations who are liable under this binder. No evidence was offered by defendant in error on that point, therefore the evidence offered by plaintiff in error is not contradicted. The question is whether under this undisputed evidence the principals whom defendant in error represented were wholly or partially undisclosed. The binder is entitled, "A binder issued for account of Underwriters at Lloyd's London." The binder recites that the Underwriters at Lloyd's London are bound to plaintiff in error. King Cook, a witness called by plaintiff in error, testified that he was the manager and vice-president of defendant in error; that a binder is a temporary contract which is to remain in force and effect until a permanent policy signed by each of the Lloyd's of London underwriters who took part in the risk is sent from London. Sometimes there are fifty names signed to a policy, sometimes only two, and sometimes two hundred. He testified he could not tell who was bound until the policy arrived, and that defendant in error acted as the agent of the underwriters, namely, Morgan, Lyons & Co., who were members of Lloyd's at London.

After the ring was stolen plaintiff in error notified Cook personally of the loss, and on August 29, 1925, wrote him a letter stating the particulars of the loss. On October 28, 1925, a letter from defendant in error was received by plaintiff in error, in which it was stated, among other things, that "when we received your letter of August 29, addressed for attention of our Mr. King Cook, we took the matter up with our correspondents in London, Messrs. C. E. Heath & Co., Ltd., 36-38 Cornhill, London, E. 6-3 England, and gave them the entire history of the case. Under date of September 18, 1925, they replied as follows: 'We thank you

for your letter of the 29th ult. with reference to claim of $2000 for loss which occurred on the 23d of August, last. We have taken the matter up with the underwriters, who do not see that they are interested in any way, as the insurance was canceled at their request on the 5th of April, 1925.'" On October 31, 1925, the attorneys for plaintiff in error re-.ceived a letter from defendant in error, as follows: "We have received your letter of the 29th to Messrs. C. E. Heath & Co. of London, England. We can furnish you a list of the undisclosed principals referred to, if necessary."

In *Ell Dee Clothing Co.* v. *Marsh,* 247 N. Y. 392, 160 N. E. 652, the facts are almost identical with the facts in the case at bar. Marsh, as agent of Lloyd's London, issued a binder to plaintiff covering loss by burglary. No policy was ever issued. It was held that the agent represented an undisclosed principal and that the agent was personally responsible for the loss. The court said: "London Lloyd's is a voluntary association of merchants, ship owners, underwriters and brokers, organized in the seventeenth century and growing into a vast commercial organization. To it is due much of the law of marine insurance. In 1871 it was granted all rights and privileges of a corporation. In its rooms an extensive insurance business is carried on. Lloyd's itself, however, writes no policies. A broker for one wishing insurance posts the particulars of the proposed risk. Then each underwriting member of the association who wishes to do so subscribes his name and the share of the total desired that he wishes to take. When that total is reached the insurance is effective. The policy in the form approved by Lloyd's is then issued, containing the names of the underwriters bound thereby and the name of their attorney in fact who handles the insurance affairs of the group. So who will become obligated on any policy is not and cannot be known until the underwriting is complete, and in each case only those who underwrite each particular policy are liable for any loss under that policy and liable for

the amount which they have underwritten. The insured contracts with each separately—not with the group jointly. (*Fish* v. *Vanderlip*, 218 N. Y. 29, 112 N. E. 445.) Therefore, while the binder was signed by Marsh with the knowledge by all that he was acting as agent, who were or were not to be the principals even he did not know and could not know. Under such circumstances the agent becomes personally liable on his contract. Not only were his supposed principals unknown to either Mr. Dewey and his agents, in fact there were none."

The following English cases cited by plaintiff in error give the history and mode of operation of Lloyd's London and are in accord with the rules announced in the New York case: *Lloyd's* v. *Harper*, L. R. 16 Ch. Div. 290; *Becker* v. *Marshall*, 11 Lloyd's List Law Rep. 114; *Trustee* v. *Marshall*, 12 id. 170; *Becker* v. *Marshall*, 12 id. 413; *Cuppitman* v. *Marshall*, 18 id. 277; *Industrial Guaranty Corp.* v. *Corporation of Lloyd's*, 19 id. 78; *Pennsylvania Co.* v. *Mumford*, 2 K. B. 537.

Under the above authorities and under the undisputed facts in evidence the principals liable under the binder were undisclosed, and defendant in error was liable unless the binder was canceled prior to the loss.

The court admitted in evidence a letter dated March 26, 1925, addressed to plaintiff in error and signed by defendant in error, which letter stated that "in accordance with the privilege reserved to the company in the body of its policy, Lloyd's of London hereby notifies you that it cancels its binder No. 52, agency at Chicago, Illinois, covering $2187 on jewelry, and that in accordance with the provisions of the policy all liability of said company hereunder will cease and terminate at noon on the 5th day of April, 1925." The binder provided it might "be canceled by the assured and by the underwriters by a five-day notice issued by Cannon, Carolan, Ringer, Inc., of Chicago, to assured or assured's agents," and was "not valid unless countersigned by Cannon,

Carolan, Ringer, Inc., of Chicago." A. T. Graham, treasurer of defendant in error, testified that this letter admitted in evidence was not a carbon copy of the original but was a copy made from the original. Plaintiff in error testified that he received a letter but was not sure that the letter offered in evidence was the same; that so far as he remembered it was the same, but he did not recollect; that the letter in substance stated something about the cancellation of the insurance on a certain date; that he received the letter some time in March but did not remember the date. It is not claimed that the unearned premium on the binder attempted to be canceled was paid to plaintiff in error or tendered to him.

In *Ætna Ins. Co.* v. *Maguire,* 51 Ill. 342, and *Peoria Marine and Fire Ins. Co.* v. *Botto,* 47 id. 516, the policies provided for a cancellation under certain conditions and for a refund of the premium for the unexpired term, and it was held that a return of the premium was a condition precedent to the cancellation of the policies. To the same effect is *Dickcrson* v. *Northwestern Mutual Life Ins. Co.* 200 Ill. 270. In 32 Corpus Juris, 1252, it is said: "Ordinarily, apart from any provision to that effect, the return or tender to the insured of the unearned premium is a condition precedent to the cancellation of the policy by the company unless the policy provided otherwise or unless such return or tender is waived." Our attention has not been called to any case where this court has held that a return of the unearned premium is a condition precedent to a cancellation of the policy where there is no provision in the policy for such return, but this has been the holding of the Appellate Court in several cases. Where a policy is canceled by an insurance company we see no good reason why the company should not be required to pay to the insured the unearned premium as a condition precedent to the cancellation. The cancellation is for the benefit of the company. By the cancellation the company voids its contract. When

it has received the premium for the full period and desires to cancel the policy it should be required to pay the part of the premium which is unearned prior to such cancellation. An offer was made to re-pay after the loss in this case, but this was too late to avoid liability on the ground of cancellation.

Defendant in error insists that even though the re-payment was a condition precedent to cancellation, plaintiff in error recognized the validity of the cancellation, waived his right to insist that the cancellation was not made, and attempted to secure other insurance to replace the policy canceled. The evidence shows that the binder in question was secured for plaintiff in error by Charles W. Strook, an insurance agent. Strook testified that on March 26 or 27, 1925, he had a conversation with plaintiff in error in which witness asked plaintiff in error if he had received a letter of cancellation, and plaintiff in error replied that he had. Witness asked him if he (witness) should try to replace the insurance in other companies, and plaintiff in error replied that it was all right for him to replace it; that witness tried to replace it in several companies, including other companies represented by defendant in error, but he did not succeed in replacing it, and that he reported to plaintiff in error on several occasions that he could not secure other insurance. He testified that he could not remember what plaintiff in error said on these occasions but that he was favorable to such replacement. There is no evidence in the record of a waiver by the plaintiff of re-payment of the unearned premium.

The judgment of the Appellate Court will be reversed and the judgment of the superior court will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment of Appellate Court reversed.*
*Judgment of superior court affirmed.*