WALLACE *v.* STATE FARM MUT. AUTOMOBILE INS. CO.

(*Nashville,* December Term, 1948.)

Opinion filed January 17, 1949.

Holman, Holman & Matthews, of Fayetteville, and Hume, Howard & Davis, of Nashville, for plaintiff in error.

Berry C. Williams, of Fayetteville, for defendant in error.

Mr. Justice Burnett delivered the opinion of the Court.

This is a suit to recover on a contract of automobile collision insurance. The insurance company denied liability upon the ground that the policy relied upon had been cancelled. The cause was heard below on a stipulation of facts. Judgment was rendered in favor of the policy holder and against the insurance company and this appeal follows. The following, in substance, constitutes the basic facts of the stipulation on which judgment was rendered.

On or before June 30, 1943, the insurance company issued to Wallace a collision insurance policy on an automobile belonging to Wallace. From this original effective date of the policy the premium was paid to and accepted by the company, semi-annually, up to August 8, 1947. On this last mentioned date the semi-annual premium was sent said company paying the insurance up to February 8, 1948. After receipt of this last payment

the insurance company on August 13, 1947, wrote Wallace:

"It is our desire to be relieved of liability for insurance under your State Farm Mutual Policy No. 6091609-Tenn., covering a 1941 Ford Coach.

"This cancellation is effective 12:01 A. M. Standard Time, August 20, 1947."

The above quoted letter was received by the insured on August 15, 1947, and referred to the policy and automobile in question. No other communication was had between the parties until after the loss claimed.

On September 8, 1947, the insured automobile sustained collision damage in the sum of $938.00, if there is liability under the policy. On September 9, 1947, the insurance company's agent was notified of the loss and settlement was refused.

On September 12, 1947, the insurance company mailed Wallace its draft for the exact amount of the semi-annual premium paid it on August 8, 1947. This draft was received on September 14, 1947, and was refused by Wallace.

The policy contained a cancellation clause as follows:
"*Cancellation.*

"This policy may be cancelled by the named insured by mailing to the company written notice stating when thereafter such cancellation shall be effective. *This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancelation shall be effective.* The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such

written notice either by the named insured or by the company shall be equivalent to mailing.

"If the named insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. *If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancelation is effected, and, if not then made, shall be made as soon as practicable after cancelation becomes effective.* The company's check or the check of its representatives mailed or delivered as aforesaid shall be sufficient tender of any refund of premium due to the named insured."

We have italicized the pertinent provisions of this clause. It will be noted that in the first paragraph the company provides that it may cancel on five days written notice while the second paragraph provides that "earned premiums shall be computed *pro. rata*" and in the following sentence that "premium adjustment may be made at the time cancellation is effected, and, if not then made, shall be made as soon as practicable after cancelation becomes effective."

"It is unanimously agreed that payment or tender of the unearned premium is a condition precedent to the cancelation by the insurer of a policy which, in one sentence, provides for cancelation on giving notice to that effect and on refunding the unearned premium; and which does not require the surrender of the policy." 29 Am. Jur., sec. 290, p. 268.

In a well written and exhaustive annotation on the subject in 127 A. L. R., at page 1343, it is said:

"Where the cancelation provision applicable to the insurer's right to cancel provides for the exercise of such right upon notice to the insured to that effect and upon

refunding a ratable proportion of the premiums for the unexpired term, or contains substantially similar language (but has no provision pertaining to the return of the unearned premium on surrender of the policy or on demand of the insured), the universally recognized rule is that a return or tender of the unearned premium is a condition precedent to a cancelation of the policy by the insurer."

Immediately following this statement, cases from twenty-one states, the United States and Canada, are cited as supporting the statement. The reasoning of many of these cases is to the effect that notice of cancellation and tender of the unearned premium "must be simultaneous" in order to effect a cancellation. One Illinois court reasoned thus: "There is no obligation resting upon the assured to dance attendance at the place of business of an insurance company, and await their pleasure. They know when they determine to cancel a policy, and forthwith, with their determination, they should tender the unearned premium." *Aetna Ins. Co.* v. *Maguire*, 51 Ill. 342. This case was followed in *Annes* v. *Carolan, Graham, Hoffman, Inc.*, 336 Ill. 542, 168 N. E. 637, 640, the court saying: "Where a policy is canceled by an insurance company we see no good reason why the company should not be required to pay to the insured the unearned premium as a condition precedent to the cancellation. The cancellation is for the benefit of the company. By the cancellation the company voids its contract. When it has received the premium for the full period, and desires to cancel the policy, it should be required to pay the part of the premium which is unearned prior to such cancellation."

In another opinion it was said: "We think it is incumbent on every insurance company . . . to tender the unearned premium with the notice of cancellation. The tender must be held to be a condition precedent, else in case of litigation growing out of the transaction, the company would, all the time, have the use of the money of the assured, and he, to that extent, be prevented from effecting any other insurance. We think justice and fair dealing requires this, as nothing short of it will put the contracting parties in *statu quo.*" *Peoria Marine & Fire Ins. Co.* v. *Botto,* 47 Ill. 516.

Under the undisputed facts of the present case the company accepted the premiums for a period of four years and then suddenly without any reason, insofar as this record reveals, canceled this policy. They made no attempt to tender or return this last premium payment until after loss, yet they had almost thirty days from their notice of cancellation before returning the unearned premium. This unearned premium when returned did not purport to deduct the days of admitted coverage, i. e., from August 8, 1947 through August 20, 1947, but was a return of the entire premium paid on August 8, 1947.

In any way we look at the matter, the balance in the hands of the company after the cancellation, merely creates a debtor creditor relationship. The policy contract does not require of Wallace (the policy holder) that he make demand for this unearned premium. The company merely says it will either pay this "at the time cancelation is effected" or it "shall be made as soon as practicable" thereafter. This was merely a promise by the company that if the return premium did not come with the cancellation that it would be made with all

promptitude considering the surrounding facts as to how long it would take to calculate this unearned premium. The language 'as soon as practicable' means a reasonable time. *Vanderbilt* v. *Indemnity Ins. Co. of North America,* 265 App. Div. 495, 39 N. Y. S. (2d) 808.

The insurance company relies in the main on the case of *Summers* v. *Travelers Ins. Co.*, 8 Cir., 109 F. (2d) 845, 127 A. L. R. 1336. This case involved a cancellation clause of an automobile liability policy similar in all respects to the clause in the instant case down to the provision relating to a return of the unearned premium. The clause in question in the *Summers Case* provided that *upon demand* the company would refund the excess of premium paid by the insured above the *pro rata* premium for the expired term. The court in the *Summers Case,* held that the return or tender of this unearned premium was not a condition precedent to an effective cancellation. The reasoning of the court was that the notice itself terminated the insurance and that the unearned premium was returned as a consequence of cancellation and not as a condition precedent thereto. Other courts hold just the opposite under a like clause, some agree. Many of these cases are annotated in a comprehensive annotation to the *Summers Case* as reported in A. L. R., particularly at page 1354.

After years of experience and divergent constructions of the language of the old clauses the clause in the contract before us was born. It is essentially different, as noted by the underscored part of the quoted clause, so that the refund or tender of the unearned premium is not essential to cancellation. The only cases we have found construing the present clause so hold.

In 1945 the Appellate Court of Illinois in *Parks* v. *Lumbermans Mutual Casualty Co.*, 327 Ill. App. 356, 64 N. E. (2d) 210, 211, had under consideration a cancellation clause identical with the clause in the case now before us. The opinion refers to the Illinois cases we have cited and quoted from herein, in the following language.

"We are not concerned here with a standard cancellation clause and those cases are not applicable in view of the contracting rights of the parties. It is interesting to note, however, that the *McKenzie Case*, the first Illinois case to announce the rule on the 'standard cancellation clause,' based its decision upon *Peoria Marine & Fire Ins. Co.* v. *Botto*, 47 Ill. 516, and *Aetna Ins. Co.* v. *Maguire, et al.*, 51 Ill. 342. In the *Botto Case* the policy provided that the company could elect to cancel 'in which case the company will refund the premium for the unexpired time.' In the *Maguire Case* the cancellation clause is not set out, and the court said that under the fifth provision of the policy there could be no cancellation unaccompanied by a return of the unearned premium. Most of the later Illinois Appellate Court cases repeating the rule, cited the *McKenzie Case* [*Hartford Fire Ins. Co.* v. *McKenzie*, 70 Ill. App. 615] as authority."

In reference to the identical clause here involved the Illinois Court said at page 212 of 64 N. E. (2d):

"Where the policy provides that the refund shall be made as a condition precedent to, or simultaneously with, cancellation there is no difficulty. The obligation of the insurer is clear. Where the policy is silent on the subject, *Annes* v. *Carolan* [*Graham, Huffman, Inc., supra*] applies to require the refund prior to cancellation. Where there is an ambiguous provision with respect to the refund, it should be construed to require the refund prior

to cancellation. The provision before us is not silent on the subject, nor is it ambiguous. It provides that the company may adjust the premium at the time of cancellation but shall as soon as practicable thereafter. It is not contended here that the refund was not made 'as soon as practicable' after the cancellation notice. It is insisted that the cancellation was not effected because the refund was not made with notice of cancellation.

"The defendant had the privilege of adjusting the premium at the time cancellation was effected. It had the obligation, in the event it did not exercise the privilege, to do so as soon as practicable after the cancellation became effective. In view of these considerations, we believe the apparent ambiguity in the last sentence in the provision of the policy under consideration is dissipated. We think it means that the defendant in exercising the privilege or fulfilling the obligation, in making the premium adjustment, may mail or deliver its check in the same way that mailing or delivering of the notice of cancellation was made. The provision with respect to the notice of cancellation provided that delivery by either party should be equivalent to mail, and that mailing of notice should be sufficient proof of the notice. We believe, therefore, that the policy had been canceled prior to the accident and that defendant was not liable upon the policy."

This reasoning seems sound and will be followed by us.

This same court had this identical clause again before it and reached the same conclusion. See *Leslie* v. *Standard Acc. Ins. Co.*, 327 Ill. App. 343, 64 N. E. (2d) 391, 393. In this case very pertinent language was used as follows:

"It is not the function of courts to make new contracts for parties by construction, and where the parties are competent to contract and the provisions of the contract are not against the public policy of the State, the parties are bound thereby. . . . The relationship existing between the insurer and the assured is a contractual relationship and there is no element of a trust relationship involved. If the parties are competent to contract they have the legal right to put into their contract such provisions as they deem fit, and the reasonableness or wisdom of the provisions used are not matters of moment to the Court construing them." (Authorities cited.)

██ There is no ambiguity in the language used in the policy before us. Where the insurance contract is not ambiguous it is our duty to apply to the words used their ordinary meaning and neither party is to be favored in their construction *Seay* v. *Georgia Life Ins. Co.*, 132 Tenn. 673, 179 S. W. 312, Ann. Cas. 1916E, 1157. The well recognized rule of construing language of an insurance policy most strongly against the insurance company (the one who writes the policy), *Pacific Mut. Life Ins. Co.* v. *Galbraith*, 115 Tenn. 471, 91 S. W. 204, 112 Am. St. Rep. 862, does not permit us or cause us to create an ambiguity where none exists.

██ It seems to us that in the absence of any proof and evidence before the Court as to how much time would be "practicable" in order to conform to the language of the cancellation clause, that we cannot assume judicially or judiciously that the refund of the premium was not done as soon as practicable after cancellation. We must conclude, in the absence of proof to the contrary, that the insurance company refunded the premium in the regular routine manner, and followed the course of established bookkeeping and accounting practices.

We therefore conclude that the policy having been canceled as of August 20, 1947, in the manner provided by the policy for cancellation, that said policy was not in effect on the 8th of September 1947, and that, therefore, no liability attached. For these reasons the case must be reversed and dismissed at the cost of the defendant in error.

All concur.