JEROME KLUBECK, Indiv. and d/b/a J. Klubeck Investments, Plaintiff-Appellant, *v.* DIVISION MEDICAL X-RAY, INC. *et al.*, Defendants-Appellees.

First District (5th Division) No. 81—1289

Opinion filed August 13, 1982.

Siegan & Weisman, Ltd., of Chicago (Kenneth R. Siegan and Keith M. Kanter, of counsel), for appellant.

Paula M. Uscian, of Collins & Amos, of Chicago, for appellees.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from a judgment in a bench trial finding that the agreement upon which he based his breach of contract action (the Agreement) violated section 11—3 of the Illinois Public Aid Code (Ill. Rev. Stat. 1979, ch. 23, par. 11—3) (the Code) and was therefore void.

On appeal, he contends that there was no such violation because the agreement (1) created a security interest, (2) contained an assignment, and (3) had portions which were severable and enforceable.

Only count I of the amended complaint is involved in this appeal, and in it plaintiff alleged in substance that defendants agreed to jointly factor their financial paper and accounts receivable to plaintiff; that under the terms of the Agreement, plaintiff was to pay defendants 79% of the face value of such receivables which were derived from welfare reimbursements for medical services rendered; that such receivables were thereafter to be assigned to plaintiff by defendants; that defendant Greenview Medical Laboratory, Inc. (Greenview), executed a written contract as evidence of the Agreement, but defendant Division Medical X-Ray, Incorporated (Division), failed to deliver to plaintiff the contract which it allegedly executed; that defendants represented to plaintiff that they were and would remain authorized to receive welfare payments from the State of Illinois during the course of their dealings with plaintiff; that in consideration of the parties' mutual promises, plaintiff advanced to defendants $129,353.70 based on the welfare receivables due defendants but was unable to obtain payment on the receivables from the State; that defendants were obligated under the contract but refused to pay to plaintiff the difference between the amount loaned to defendants and the amount paid plaintiff by the State; and that as a result of defendants' alleged breach of contract, plaintiff incurred damages amounting to $129,353.70, which represented the total receivables factored to plaintiff.

In their separate answers to the complaint, both defendants in substance denied entering into the Agreement with plaintiff and further alleged that any such Agreement would be illegal and void under section 11—3 of the Code. Defendant Greenview further alleged that while plaintiff advanced it such funds, he recovered the full amount from the State "pursuant to void assignment of benefits," and that it had no duty under the Agreement to pay plaintiff. In its answer, Division generally denied all other allegations of count I.

As presented in the record, the Agreement names "Greenview Clinical Lab. & X Ray" as the "debtor" and plaintiff as the "secured party." It is undisputed, however, that the party referred to in the Agreement is defendant Greenview and that defendant Division, although not mentioned therein, entered into the same Agreement which purported to grant plaintiff "a security interest in certain medical welfare and/or public assistance accounts receivable now due him or which may hereafter become due to him from account debtors and all proceeds thereof." Among the designated account debtors were

the Illinois Department of Public Aid, the Illinois Department of Welfare, county departments of public aid, and various insurance carriers.

Paragraph 1 of the Agreement provided that plaintiff would lend Greenview a sum equal to 89% of amounts which in plaintiff's opinion represented disbursements made by the account debtors on each "Statement of Services Rendered" submitted to such account debtors for payment. Paragraph 2 required plaintiff, in addition to making loans, to provide "all necessary bookkeeping, billing and administrative services" in the processing of Greenview's accounts receivable. In return therefor, Greenview agreed to pay plaintiff 100% "of the amount upon which the loan was based within 120 days after each loan was made" and thereafter to pay interest on any unpaid balance thereof.

Paragraph 3 granted plaintiff the power of attorney to establish a mailing address in Greenview's name "for the receipt of payments and other correspondence from account debtors" and further granted plaintiff "the authority to receive, sign, endorse, execute, and deposit any checks or drafts payable to [Greenview] and to apply said payments against amounts due" plaintiff from Greenview. The power of attorney was coupled with an interest and was irrevocable while any money was owed by Greenview to plaintiff. Paragraph 4 provided in part that all correspondence in the form of payments and accompanying vouchers received by Greenview which pertained to statements and accounts in which plaintiff had a "security interest" were to be delivered to plaintiff within 72 hours of receipt by Greenview.

Paragraph 5 provided that if the account debtors paid less than 100% of the amount upon which the loan was based or refused to honor statements of services rendered within 120 days of the date of submission to them by plaintiff, then the difference between the amount paid by the account debtor and 100% of the amount upon which the loan was based was to be paid by Greenview. Paragraph 9 authorized plaintiff to deal directly with account debtors on behalf of Greenview by notifying them to make payments directly to plaintiff on statements and accounts in which plaintiff had a "security interest." It further authorized plaintiff to collect and control such proceeds, to settle and compromise disputed claims, and to collect such accounts. Finally, paragraph 11 provided that plaintiff was to retain 10% of all outstanding receivables to be collected under the Agreement in order to cover any amounts which account debtors refused or failed to pay.

In its judgment order, the trial court found that the Agreement upon which count I of the amended complaint was predicated was "a

subterfuge to avoid the prohibition found in" section 11—3 of the Code and thus was void. Accordingly, judgment was entered for defendants, and this appeal followed.

OPINION

Section 11—3 of the Code provides that "[a]ll financial aid given under Articles III, IV, V, VI and VII shall be absolutely inalienable by assignment, sale, attachment, garnishment, or otherwise." (Ill. Rev. Stat. 1979, ch. 23, par. 11—3.) "Financial aid" is defined, in relevant part, in section 2—6 of the Code as "a money or vendor payment to or in behalf of a recipient for basic maintenance support or medical assistance ***." (Ill. Rev. Stat. 1979, ch. 23, par. 2—6.) "Vendor payment" is defined in section 2—5 as "a payment made directly to the person, firm, corporation, association, agency, institution or other legal entity supplying goods or services to a recipient." (Ill. Rev. Stat. 1979, ch. 23, par. 2—5.) The legislative purpose underlying those cited provisions of the Code was stated in *First National Bank v. Coleman*(1979), 68 Ill. App. 3d 256, 258, 385 N.E.2d 879, 881:

> "[T]he class of individuals which the legislature sought to protect by this legislation are the public aid recipients and not the vendors of medical services. Although the language of sections 11—3, 2—5 and 2—6 is phrased in absolute terms that all vendor payments are exempt from garnishment, it must be reasonably construed so that absurd and unjust consequences will be avoided."

We think it unnecessary to determine whether the Agreement creates a security interest or an assignment, since it is apparent from the record that the enforcement of the Agreement, irrespective of its formalities, would produce absurd or unfair results. Although the Code seeks to protect public aid recipients rather than vendors of medical services, it is apparent that the Agreement would involve State agencies too heavily in private contractual arrangements and, by diverting such agencies from the primary tasks of alleviating and preventing poverty (Ill. Rev. Stat. 1979, ch. 23, par. 1—1) and providing "essential medical care and rehabilitative services" (Ill. Rev. Stat. 1979, ch. 23, par. 5—1), their energies would be needlessly dissipated. Such, in our view, was not the legislative intent behind section 11—3.

In *Coleman*, which plaintiff cites in support of his position, a physician's judgment creditor sought to garnish funds which were due to be paid from the Illinois Department of Public Aid (the Department) to the physician for medical services rendered to public aid recipients. The issue before the court was thus whether such monies payable by

the Department were subject to garnishment by the physician's judgment creditor despite the prohibition on inalienability of section 11—3 of the Code. Holding that such reimbursement funds were not exempt from garnishment, the court rejected the contentions that permitting such garnishment would discourage vendors from furnishing essential medical services to indigents and that, as a matter of policy, allowance of such garnishments would place an undue burden upon the State.

■■ ■ In our view, *Coleman* is distinguishable from the present case, since the judgment against the physician there was not predicated upon his statutory right to receive vendor payments. Here, by contrast, plaintiff's asserted right to defendants' vendor payments forms the basis of his claim for judgment against defendants. Furthermore, the contract and the record before us indicate an attempt by the parties to alienate defendants' vendor payments in favor of plaintiff. As the testimony of plaintiff reveals, the Agreement was purposely drafted in order to avoid the reach of section 11—3. A contract which necessarily contemplates a violation of law or seriously injures the public welfare is void and unenforceable (*Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 379 N.E.2d 1307), and a statute need not expressly declare a contract void and unenforceable to render it available to a defendant as grounds for the defense of illegality (*American Buyers Club of Mt. Vernon, Illinois, Inc. v. Grayling* (1977), 53 Ill. App. 3d 611, 368 N.E.2d 1057). It is therefore immaterial whether the Agreement contemplated a security interest or an assignment. Furthermore, while section 11—3 is primarily a shield for the protection of certain disadvantaged persons—such as welfare recipients who, without such protection, might be oppressed by their creditors (see *Cochennour v. Lofton* (1978), 62 Ill. App. 3d 955, 379 N.E.2d 922; *Kaufman v. Hicks* (1974), 17 Ill. App. 3d 274, 307 N.E.2d 615 (abstract)), the enforcement of agreements such as the one in question would have adverse indirect impact. If, for example, a physician who had entered into such an arrangement could not be assured of direct payment for services rendered or if a medical laboratory could not expect direct reimbursement for performing its procedures, the incentive to provide health care to the needy might be seriously reduced and thereby defeat the ends of the Code. For the above reasons, we believe the legislature designed the Code to proscribe the alienability of vendor payments like those in question.

Plaintiff further contends that even if the Code invalidates portions of the Agreement, the remainder is severable and enforceable. We disagree.

■■ The theory upon which a case is tried in the trial court cannot

be changed on review, and an issue not presented to or considered by the trial court cannot be raised for the first time on review. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *Women's Athletic Club v. Hulman* (1964), 31 Ill. 2d 449, 202 N.E.2d 528.) Moreover, an appellate court should not consider different theories or new questions if proof might have been offered to refute or overcome them had they been presented at trial. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831.) In the present case, it is evident from the record that plaintiff's entire theory at trial was that the Agreement as a single entity was valid and enforceable under th Code. Plaintiff did not assert a contract severance theory. To permit him to do so at this stage would greatly prejudice the opposing parties. See *Graves v. North Shore Gas Co.* (1981), 98 Ill. App. 3d 964, 424 N.E.2d 1279.

Assuming no waiver, plaintiff's contention is, in any event, without merit. In general, the intention of the parties is determinative on the question of contract severability. (*Kaplan v. Keith* (1978), 60 Ill. Ap. 3d 804, 377 N.E.2d 279.) A contract is not severable, however, if the parties assented to all the promises as a single whole and if striking any promise or set of promises would destroy the basis of the bargain. (*Bonner v. Westbound Records, Inc.* (1979), 76 Ill. Ap. 3d 736, 394 N.E.2d 1303.) Stated otherwise, where a contract by its terms, nature and purpose contemplates and intends that each of its parts and the consideration are to be performed as a whole, it is an entire contract. *State Security Insurance Co. v. Linton* (1978), 67 Ill. App. 3d 480, 384 N.E.2d 718.

In paragraphs 2 and 5 of the Agreement in question, defendants agreed to repay the loans by tendering to plaintiff the full amount upon which the loans were based. Thus, those provisions suggest a simple loan transaction and defendants' obligation to repay to plaintiff the full amount due under the Agreement. However, the granting to plaintiff of certain rights in anticipated payments from the State was not, as plaintiff maintains, a separate and distinct portion of the Agreement. Rather, the Agreement was founded upon the purported right of plaintiff to seek reimbursement from defendants' vendor payments. It is significant in this regard that plaintiff testified he had no document in his possession which showed that he had made a demand for repayment of any loan that had become 120 days old. Moreover, plaintiff kept only a running total of all money out, against which he subtracted all money in. This method of bookkeeping failed to show what balances remained due 120 days after the alleged loans were made. Thus, despite plaintiff's contention as to the severability of paragraphs 2 and 5, plaintiff apparently did not record the ad-

vances to defendants as individual loans, nor did he discharge repayments under a 120-day schedule. To strike the promise of vendor payments to plaintiff while allowing the remaining portions of the Agreement to survive would, in our view, destroy the basis of the instant parties' bargain. In other words, plaintiff's asserted right to receive vendor payments and defendants' ultimate obligation to repay the loan were intended to be performed as a whole. We think it clear, therefore, that plaintiff would not have entered into the Agreement if the right to vendor payments had not been made an integral and inseparable part of the bargain.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.