DIANE CARTER, Plaintiff-Appellant, v. JOHN T. DUNLOP, M.D., Defendant-Appellee.

Second District   No. 2—84—0821

Opinion filed October 25, 1985.

Michael R. Alberts, of Robert G. Peterson & Associates, of Chicago, for appellant.

Lawrence J. Helms and James A. Christman, both of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Diane Carter, appeals from summary judgment entered in defendant's favor by the circuit court of Lake County. The plaintiff had refiled suit for medical malpractice against the defendant on August 19, 1983, after a voluntary dismissal of her earlier-filed action based upon the same allegations. In essence, plaintiff alleged defendant failed to prescribe proper and sufficient dosages of medication and to provide an adequate course of treatment for her.

Defendant's first effort to depose plaintiff's expert witness, Doctor McNabola, in January 1984, was unsuccessful. By agreed order in

March, trial of the cause was set for July 2, 1984. Subsequent numerous efforts by defendant to depose Doctor McNabola were unsuccessful, and defendant moved to bar expert testimony at trial.

The trial court's order entered after hearing on the motion on June 14, 1984, barred McNabola from testifying, and compelled disclosure by plaintiff within 14 days of any expert witnesses she intended to call, or such witnesses would be barred from testifying. The trial date was continued to August 6 on the court's own motion.

No disclosure was made by plaintiff by June 28, and defendant moved on July 5 for summary judgment, based on plaintiff's inability to establish a *prima facie* case in medical malpractice due to lack of any expert witnesses. The court granted plaintiff leave to respond to the motion and to defendant to reply. Plaintiff contended in her response filed July 23, 1984, that the testimony of a medical expert was not needed since ordinary laymen would be able to understand the evidence in the case, and render a verdict. In the alternative, plaintiff stated she "adopts Dr. Schimel as her expert." Doctor Schimel was the physician who treated the plaintiff subsequent to the defendant. Doctor Schimel was deposed upon plaintiff's subpoena in June of 1983 during the pendency of the cause after its original filing.

After defendant's reply and a hearing on the motion, the court granted summary judgment in defendant's favor on August 9, 1984.

Plaintiff on appeal presents three issues for review: (1) whether the trial court erred in granting summary judgment when statements by a subsequent treating physician gave rise to questions of fact, despite the fact no expert witness to testify at trial was disclosed; (2) whether the trial court erred in barring plaintiff from disclosing further expert witnesses; and (3) whether the trial court erred in requiring an expert witness on behalf of the plaintiff.

Preliminarily, defendant contends that the second issue was waived due to plaintiff's failure to raise the issue below. We agree.

■ It is well settled that issues not raised in the trial court are generally considered waived on appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500.) The reasoning underlying this general precept is that the appellate court should not consider different theories or new questions on appeal, if proof might have been offered to refute or overcome them had they been presented below. *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1052.

■ Although plaintiff argues the question of whether the court could bar her from disclosing further expert witnesses was presented below at the June 14, 1984, hearing on the defendant's motion to bar

expert testimony, there is no support in the record for her argument, since no report of proceedings of that hearing has been provided this court. The June 14 order reset the cause for trial from July 2 to August 6, and provided that:

"[P]laintiff's declared expert William McNabola is barred from testifying at the trial of this cause and plaintiff is compelled to disclose any expert witness to be called by plaintiff within 14 days or be barred from calling any experts at trial. Plaintiff is also required to answer defendant's outstanding discovery requests within 14 days."

Plaintiff filed no motion to reconsider, and her subsequent memorandum opposing summary judgment does not include any argument to the effect that the court's order was improper; rather, plaintiff's alternate contentions were that either no expert testimony was needed, or that she would adopt Doctor Schimel as her expert witness. Accordingly, the issue of the propriety of the court's order has been waived.

Plaintiff next argues that even if the court's disclosure order is upheld, its subsequent grant of summary judgment was improper either (1) because the instant cause falls within one of the exceptions to the expert testimony rule or (2) the deposition testimony of Doctor Schimel gave rise to questions of fact, thereby precluding summary judgment.

Relying on the facts and admissions contained in the depositions of the defendant and Doctor Schimel, plaintiff contends it is evident that the applicable standard of care and breach of said standard in this case falls within the common-knowledge-of-jurors exception to the expert testimony rule.

■ It is well established that in order to prove medical malpractice, a party must establish by expert medical testimony the standard of care by which defendant's conduct is to be measured, that the defendant was unskillful or negligent in light of this standard, and that his want of skill or care caused the injury to the plaintiff. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249.) One exception to this rule is found where the physician's conduct is so grossly negligent or the treatment so common that laymen could readily appraise it, and this common knowledge exception permits the jury to determine, on the basis of its own experience, whether the medical act or omission was negligent. (*Metz v. Fairbury Hospital* (1983), 118 Ill. App. 3d 1093, 1098.) Examples of negligent acts within a jury's common knowledge and actionable without expert medical testimony include sponges left in the abdomen, an instrument left behind after surgery, and X-ray burns.

*Comte v. O'Neil* (1970), 125 Ill. App. 2d 450, 454.

■ Plaintiff's claim that her case falls within the common knowledge exception cannot be accepted. Her complaint alleged the defendant failed to prescribe proper and sufficient dosages of medication for her, and failed to provide an adequate course of treatment. As defendant points out, it is unlikely that a layman would know what hyperthyroidism is, what its symptoms and effects are, how it can be controlled, the time it takes for medication to create a response, or what effect the lack of medication would have. Clearly, expert testimony would be required to establish the standard of care which plaintiff required, before any assessment could be made of whether the defendant's acts or omissions constituted a breach of that standard.

Plaintiff's remaining contention is that, notwithstanding her failure to disclose an expert witness to testify at trial, the deposition testimony of Doctor Schimel gave rise to questions of fact which made the court's grant of summary judgment in defendant's favor improper.

Defendant argues that summary judgment was proper in view of the fact expert testimony was unquestionably required in this case, and the fact plaintiff foreclosed herself from presenting such testimony by failing to disclose her expert in compliance with the trial court's order of June 14.

Plaintiff acknowledges, but attempts to distinguish, two cases which "seem to state" that failure to disclose an expert witness is a basis for granting summary judgment. In *Stevenson v. Nauton* (1979), 71 Ill. App. 3d 831, the court approved the grant of summary judgment in defendant's favor in a medical malpractice case. The court concluded there:

> "Where the plaintiff has failed to indicate that she has an expert medical opinion to sustain allegations or would be able to obtain such opinion in the future and was given numerous opportunities to secure such testimony summary judgment in favor of the defendant is proper." 71 Ill. App. 3d 831, 835.

■ A grant of summary judgment was similarly approved in *Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, where the plaintiff was given numerous continuances and every opportunity to obtain expert medical testimony, but failed to do so or to indicate that he would be able to obtain it. Plaintiff here contends these cases are distinguishable because she demonstrated the ability to produce an expert witness, Doctor Schimel. As defendant notes, however, plaintiff was given the opportunity to disclose Doctor Schimel, but she let it pass, and offered no justifiable excuse for not disclosing him within

the time allotted by the trial court. As defendant further notes, the record contains no indication that plaintiff could, in fact, produce Doctor Schimel to testify at trial, or had even approached him to ascertain his willingness to so testify.

Without expert testimony, plaintiff could not establish a *prima facie* case in medical malpractice, and the court's grant of summary judgment was appropriate.

■ Even assuming, *ad arguendo*, the deposition of Doctor Schimel was considered, the record shows there is no genuine issue of material fact, and the court's grant of summary judgment in defendant's favor was proper.

Section 2—1005(c) of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c)) provides that summary judgment may be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Discovery depositions may be used in the context of summary judgment proceedings " 'for any purpose for which an affidavit may be used.' " (87 Ill. 2d R. 212(a)(4); see *Moreno v. Joe Perillo Pontiac, Inc.* (1983), 112 Ill. App. 3d 670, 676.) Summary judgments entered on the basis of the depositions of experts have been upheld. (See, *e.g., Wooding v. L & J Press Corp.* (1981), 99 Ill. App. 3d 382; *Conrad v. Christ Community Hospital* (1979), 77 Ill. App. 3d 337; *Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974.) In determining whether there exists a genuine issue of material fact, the court considers the entire record and construes the evidence strictly against the moving party and liberally in favor of the opponent. (*Spancrete of Illinois, Inc. v. Brickman* (1979), 69 Ill. App. 3d 571, 576.) If the facts admit of more than one conclusion or inference, including one unfavorable to the moving party, the motion for summary judgment should· be denied. (*Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 1006.) On appeal, the court will reverse the order granting summary judgment if it determines that a material question of fact exists and that the moving party is not entitled to judgment as a matter of law. *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789.

It is elementary that the issues are raised initially by the complaint and answer, and that the plaintiff bears the burden of establishing, generally through expert testimony, each element necessary to constitute a cause of action for medical malpractice, including the standard of care applicable to a physician's conduct, that the physician was negligent in light of this standard, and that this negligence

proximately caused plaintiff's injury. *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423.

■ Plaintiff's complaint alleged defendant "failed to prescribe proper and sufficient dosages of medication for the plaintiff and failed to provide an adequate course of treatment for plaintiff." Defendant denied those allegations, and answered further "that plaintiff's injury, if any, was proximately caused by the plaintiff's own negligence, in that she failed to obey Doctor Dunlop's medical advice and instructions." In deciding the defendant's motion for summary judgment, the court had available the pleadings and the depositions of the two doctors. Although defendant's deposition contains neither his signature as the deponent, nor his waiver of same, plaintiff has made no objection to the deposition on these grounds, either in this court or below, however, and the court properly considered it in determining the summary judgment motion. *Cf. Bezin v. Ginsburg* (1978), 59 Ill. App. 3d 429, 435-36 (depositions properly excluded in considering summary judgment motion where rules governing signing and filing of deposition were not observed and error preserved for review).

A summary of Doctor Dunlop's deposition testimony as it was presented in his brief follows:

> "Mrs. Carter was first hospitalized at Victory Memorial Hospital on June 1, 1980 for diarrhea and gastrointestinal bleeding. Dr. Solomon, a surgeon, and Dr. Dunlop, an internist, handled the initial surgical treatment of the ulcer, which was penetrating from the stomach into the pancreas, and had presented a life-threatening condition. The patient was discharged on June 12, 1980 and followed by Dr. Dunlop as an outpatient.
>
> Dr. Dunlop estimated that the patient was around 110 pounds when discharged in June 1980, and that she got up to about 115 pounds before reporting losing weight again in December 1980. Dr. Dunlop attributed the weight loss, nervousness and vomiting during the post-operative months to the gastric problem for which she was operated.
>
> In February 1981, the patient complained of abdominal pain, nausea, vomiting, nervousness, and weight loss down to 87 pounds. Dr. Dunlop examined her, found an enlarged thyroid, rapid heart rate, heart murmur, and increased vascular sounds and diffuse tenderness in the abdomen. He formed an impression for the first time of an overactive thyroid.
>
> Tests were conducted, and a report was returned on March 2, 1981 indicating hyperthyroidism. At that time, he placed the patient on Tapazole (ten milligrams three times daily) to control

the thyroid condition. The doctor felt that the drug would have its effect within six months if it was going to work.

After starting the medication on March 3, Dr. Dunlop saw the patient on March 25, and found that she was 'significantly better' according to her blood values. Dr. Dunlop scheduled another appointment for six weeks, but the patient did not return until June 3, 1981. At that time, the patient showed significant symptoms of hyperthyroidism, and the lab results taken that day and reported on June 8 indicated that the thyroid was 'markedly abnormal'. Dr. Dunlop noted in his records on June 3, 1981 that the patient had stopped taking the Tapazole two weeks before the visit, and he was also told by the patient that she had forgotten to take 'quite a few' of the Tapazole tablets before that. Dr. Dunlop noted that the patient had had a 'very gratifying response' to the medication in March, and he resumed her on the medication at the same dosage.

Dr. Dunlop indicated that he had a long talk with Mrs. Carter on June 3, 1981 about the importance of taking the medication regularly, and he obtained her commitment to take the pills. He was convinced that she would improve on the medication if she took it as prescribed. The other alternatives for treatment were radioactive iodine and thyroid surgery.

Although Mrs. Carter was scheduled for another appointment on July 13, 1981, Dr. Dunlop never saw her again."

Plaintiff did not provide a similar summary of Doctor Schimel's deposition; our summary follows:

He first saw plaintiff on June 22, 1981. After taking a history from her, he examined her. She told him that she had had a gastrectomy in 1980 for bleeding ulcer, and that she had been diagnosed as hyperthyroid, although she was not absolutely sure as to the date of diagnosis. She reported that she had been taking a drug called Tapazole since December 1980. She was taking 10 milligrams three times a day of Tapazole, and she was also taking Tagamet, 300 milligrams, four times a day for about the past six months. She was not quite clear on the date because she had had a car accident about five years earlier that left her with a significant impairment in terms of memory. His examination of her revealed that she was thyrotoxic, and that she was extremely malnourished as a result of the thyrotoxicosis. He placed her on the maximum dose of Tapazole, 60 milligrams, and put her on a Lugol solution, an iodine solution, which blocks the release of the thyroid hormone. She was then

seen by Doctor Ganshirt, a surgeon. He felt the most appropriate treatment was to have her treated surgically by removing her thyroid gland, and that he opted not to continue with the high doses of medication because it would require extremely close follow-up, and it would not allow a rapid resolution of her symptoms. Radioiodine treatment also would not have improved her condition for at least six weeks to two years. He doubled the dosage of Tapazole that she was taking based on the fact she told him she had been taking 30 milligrams a day for approximately six months and that that was not working.

Six months is a fairly normal period in which to attempt drug therapy. Although he felt that she could have been much worse if she had not been taking the medication, it was clearly not a sufficient dosage of medication based on the results of the blood tests at the time he first saw her. He felt that if she had continued on the drug therapy at that same level, that she would have deteriorated. At the time he first saw her, there was no condition of a permanent state of ill being which could no longer be rectified by proper treatment. After her thyroid was surgically removed, her thyroid level upon her discharge was in the normal range. She began to gain weight after her discharge from the hospital and her thyroid problems were basically resolved; the only issues left were the problem of malnutrition and her ulcer.

His criticism of the treatment received by plaintiff prior to her coming to him was based on what she reported to him. When a patient is taking Tapazole, the patient's thyroid level should be monitored monthly. The reason her ulcer did not heal or that she had a reoccurrence of her ulcer was related directly to her overactive thyroid; once her thyroid came down to normal, her ulcer healed better. The monthly monitoring should consist of blood testing and supervision through clinical examination. As to whether a different approach to therapy earlier would have avoided the surgical intervention, he stated:

"If she had indeed had the disease since the summer of '80 then sometime early in '81 particularly if she was a failure of drug therapy, something else should have been done either radioiodine or surgery or the dosage should have been increased to control it under very close supervision, but just to keep the status quo that was not appropriate."

Upon questioning by the defendant's counsel, he stated that as a general rule most people who deal with thyroid disorders

such as the plaintiff's would treat with medication for six months, and then if there is no remission, would start some other treatment or at least initiate something else while they are giving the medication. He found no fault with the continuation of a regimen of medication for six months at the same level in and of itself, except if such regimen was undertaken in an unsupervised manner, if that was indeed the case, and if the thyroid level was not controlled. The dosage really depends on how the patient is responding to it. He stated 30 milligrams a day is an average dose. If the thyroid does not drop on 30 milligrams a day in a significant period of time, such as three months, the normal course of procedure is either to change the treatment you are using and try something different, or increase the dosage. His judgment that the plaintiff's medication regimen had been unsuccessful was based solely on what she told him, and on her physical condition, but that presupposes that she took the medication. He made no independent assessment as to whether she had been taking the dosage which had been prescribed. If in fact the drug was not being taken, it would change his opinion that the regimen was inappropriate. He would not change his opinion that as she presented to him she was not being adequately treated for her overactive thyroid disorder. Her condition as she presented to him was consistent with her possibly not having taken the medication for the prior month or even prior two months. Although the medication works quickly, the time period in which the thyroid level drops to normal takes a number of days to weeks to manifest itself. Failing to take the medication for a week or two weeks would show an increase in the symptoms of hyperthyroidism, but the extreme weight loss manifested by the plaintiff would not have resulted, unless there was some other reason for it. Such other reason could have been the result of pain from an ulcer. In order to have the level of thyroid hormones in the blood that plaintiff exhibited, she would have had to have taken no medicine for several weeks. The clinical picture that she had presented to him could have been possible if she had been taking the medication on and off. He immediately doubled the Tapazole dosage to 60 milligrams, although that is not what would have lowered her thyroid hormone level so quickly. It was the Lugol solution that basically shut off her thyroid hormone production. Radioiodine treatment would not have improved her condition for six weeks to two years, whereas surgery relieves

the cause immediately, and the symptoms may be treated chemically.

Based on the doctors' depositions, the court found no genuine issue of material fact existed, and granted the defendant's motion for summary judgment. We affirm the trial court's judgment.

Clearly, no issue of fact as to the proper standard of care is raised, since both doctors' depositions showed that treatment of an overactive thyroid with Tapazole for approximately six months is an appropriate course. Thirty milligrams per day is an average dose which ordinarily would be revised upward or downward within approximately three months' time depending on the response exhibited by the patient. The patient's response to the drug should be monitored monthly through clinical examination and blood testing to determine the thyroid hormone level.

Defendant's deposition testimony showed he prescribed 30 milligrams of Tapazole on March 3, 1981. His practice was to try drug therapy for three to six months, because if the drug was to have any effect at all it would do so in six months' time. He saw plaintiff again on March 25, and there was a 20% reduction in the level of thyroid hormone in her blood, an improvement in her condition which he attributed to Tapazole. He scheduled her next appointment for six weeks later, since she appeared to be responding to the drug therapy, and she was complaining about her medical bills. She did not see him again until June 3, however. Clinical examination of the plaintiff and blood tests taken that day, but not returned to him until the following week on June 8, showed a notable decline in her condition. She reported to him that she had stopped taking the medication two weeks before and had forgotten to take quite a few tablets before that also. He cautioned her about the necessity of taking the medication and scheduled to see her in another month. She declined his suggestion that perhaps she should be hospitalized. He stated that if he had had the results of the June 3 blood test he may have increased her dosage of Tapazole, but he felt that if she would take the medication as prescribed—and as she promised she would—that she would respond favorably to it as she initially did in March. Based on the pleadings and depositions, we conclude, as the trial court did, that there is no genuine issue of fact as to whether Doctor Dunlop's conduct deviated from the established standard of care.

The "genuine issue of material fact" which plaintiff asserts exists and which should have precluded summary judgment is whether she did, in fact, take the medication. That issue is material to the question of proximate cause. Defendant's answer raised the issue that it was

the plaintiff's failure to obey his medication advice and instructions which proximately caused her injury, if any.

██ Although parties opposing summary judgment are not required to prove their case at the summary judgment stage, they must provide the factual basis which would arguably entitle them to judgment. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050.) On a defendant's motion for summary judgment, plaintiff has an affirmative duty to bring forth all facts and evidence of a cognizable cause of action. (*Loizzo v. St. Francis Hospital* (1984) 121 Ill. App. 3d 172.) Summary judgment is appropriate where purported issues of material fact are not further supported by evidentiary facts or affidavits. *Miller v. Verson Allsteel Press Co.* (1984), 126 Ill. App. 3d 935, 938.

As defendant notes, he does not dispute that plaintiff's thyroid condition was inadequately treated when he last saw her on June 3. He attributed the persistence of plaintiff's hyperthyroidism to the fact, reported to him by the plaintiff herself, that she had not taken the prescribed medication at all for two weeks, and had taken it irregularly before that. An integral part of plaintiff's burden of proving the existence of a cognizable cause of action here was that defendant's conduct was the proximate cause of her injury. When asked to consider whether Doctor Dunlop's treatment of plaintiff could be criticized if in fact the treatment had been administered for only three months, not six, and that the plaintiff had not taken all the medication, Doctor Schimel stated he could not criticize the course of treatment. Rather, he could only conclude that as she was presented to him, she was not adequately treated for hyperthyroidism. Plaintiff argues, however, that even if she had not taken the medication, Doctor Schimel was still critical of the "unmonitored and unsupervised manner" in which Doctor Schimel perceived the defendant administered the prescribed drugs. The basis for Doctor Schimel's "perception" is not included in the record, however, and it is clear that he never reviewed Doctor Dunlop's records showing the plaintiff's office visits and the tests conducted.

Facts or data upon which expert opinions are based may be derived from three sources: first-hand observation of the witness, with opinions based thereon; presentation of data at trial; and presentation of data to the expert outside of court and other than by his perception. (*Hatfield v. Sandoz-Wander, Inc.* (1984), 124 Ill. App. 3d 780.) Experts' opinions are only as valid as the bases or reasons for them. (*In re T.D.W.* (1982), 109 Ill. App. 3d 852.) It appears Doctor Schimel's "perception" the plaintiff's medication therapy was unsupervised was not based on any facts or data "of a type reasonably relied

upon by experts in the particular field" in forming their opinion. *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457.

We agree with defendant that it would be fundamentally unfair to permit the plaintiff to, in effect, manufacture a claimed issue of fact by relying on the deposition testimony of an expert whose opinion was based solely on information provided to him by the plaintiff, where that information contradicted in a material aspect the information supplied to the defendant doctor by plaintiff and upon which information his treatment of her was based. In order to successfully oppose defendant's summary judgment motion, it was incumbent upon plaintiff to introduce some factual support for a conclusion that defendant might be liable to her by countering defendant's allegation in his answer that it was her own failure to take the medication as prescribed that was the proximate cause of her injury. (See *Harris v. Bethlehem Steel Corp.* (1984), 124 Ill. App. 3d 449, 452-56.) Plaintiff's offer of Doctor Schimel's deposition testimony, based on what she told him and with no review of the records of defendant's actual course of treatment, was insufficient to counter defendant's deposition in support of his motion for summary judgment. When the pleadings, depositions, and affidavits fail to establish an element of plaintiff's cause of action, summary judgment is proper. *Brunsfeld v. Mineola Hotel & Restaurant, Inc.* (1983), 119 Ill. App. 3d 337, 341.

In sum, we conclude the court properly granted summary judgment first, on the basis plaintiff was properly barred from presenting expert testimony by the June 14 order and could, therefore, not present a *prima facie* case in medical malpractice and, second, even if Doctor Schimel's deposition testimony were considered, it was insufficient to create a genuine issue of material fact and defendant was entitled to summary judgment as a matter of law.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

HOPF and LINDBERG, JJ., concur.