TIMOTHY T. CLARK, Plaintiff-Appellant, v. HAJACK EQUIPMENT COM-
PANY, Defendant-Appellee (White Materials Handling Company, a Subsidi-
ary of White Motor Corporation, *et al.*, Defendants).

First District (4th Division)   No. 1—90—3319

Opinion filed October 17, 1991.

Bresler, Brenner, Moltzen & Harvick, of Chicago (Edward W. Moltzen, Sheldon A. Brenner, and Theodore J. Castanes, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Perry C. Rocco, and Christine L. Olson, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Timothy T. Clark, filed suit against four defendants, seeking damages for injuries he sustained when he was driving a forklift truck that rolled backward off of a dock-leveling platform. Defendant Hajack Equipment Company was dismissed from the lawsuit upon summary judgment, and it is from this judgment that Clark appeals.

Clark contends that the trial court abused its discretion in granting summary judgment because there are genuine issues of material fact and that the court erred in holding that Hajack's actions or inactions did not proximately cause Clark's injuries.

We affirm.

BACKGROUND

In October 1984 Clark was operating a forklift truck manufactured by defendant White Materials Handling Company. Clark was an employee of Lithotype/Midwest Community Press (Midwest). As he backed the forklift onto a dock-leveling platform or ramp, the ramp suddenly descended, which caused the forklift to slide off and fall to

the ground. Clark attempted to jump clear but the forklift fell on his right·arm, causing serious injuries.

Clark filed a four-count personal injury complaint against the defendants, alleging theories of strict liability and negligence. Counts III and IV were directed at Kelley Company, the manufacturer of the dock leveler, and Hajack, as installer and servicer of the dock leveler. The trial court granted summary judgment in favor of Hajack as to count III, which alleged that the device was defectively designed, and no appeal was taken from that judgment.

Count IV was directed at Hajack only, and alleged that Hajack was at fault because it:

"(a) Carelessly and negligently failed to service, inspect and/ or repair the hold down bracket.

(b) Carelessly and negligently failed to test the dockleveler after servicing and/or repair.

(c) Carelessly and negligently repaired and serviced the dockleveler."

The dock leveler allows workers to load and unload trucks to and from loading docks, and bridges unequal heights by the operation of the dock-leveling platform or ramp. When the dock leveler is in use, the lip of the ramp extends out and rests on the truck bed. When it is not being used for loading, the lip can be returned to a vertical position, which causes cross-traffic legs to swing down to support the ramp and keep it horizontal and rigid. The legs rest on stops built into the frame of the dock leveler below the ramp.

Plaintiff's expert witness, Dr. Terrence Willis, testified in his deposition that the only defect in the dock leveler was in the clevis, which is an integral part of the interconnection between the cross-traffic legs and the lip of the dock leveler ramp. This interconnected system allows the dock leveler to "float" above or below dock level when in use. According to Willis, the clevis in the dock leveler was defective because "the clevis unit was not sliding properly past the push bar, because the bolts were too long, there were no spacers in there, alignment was off, members of the mechanism were getting twisted, and, simply stated, binding would occur and you would not get the lip to come all the way down every time, in which case the legs, cross-traffic legs, did not swing back into their position as they should do according to the manual given to us by Kelley."

Hajack had installed the dock leveler in 1979, but the only repair it performed was one made in April 1984, approximately six months before the occurrence. Midwest, Clark's employer, had requested Hajack to repair a cross-traffic leg chain on the dock leveler, and it is

undisputed that Hajack did not repair the clevis or any other part of the dock leveler. Instead, a Hajack employee replaced the cross-traffic leg chain, which was missing, installed a new gas spring to replace a broken one, and lubricated the dock leveler. The Hajack employee also performed a general inspection of the dock leveler and tested its operation.

Midwest, plaintiff's employer, did not have a maintenance contract for the dock leveler. Instead, an employee of Midwest, Glenn Thompson, repaired it as necessary. In 1982 or 1983, Thompson replaced certain parts in the clevis assembly of the dock leveler. In 1984, he called Hajack to replace the cross-traffic leg chain and grease the dock leveler. According to Thompson, the equipment operated properly after Hajack made the repair and also operated properly the day after Clark's accident.

Clark's expert, Dr. Willis, testified that in his opinion Midwest's modification of the clevis assembly contributed to the accident and the only defective condition in the dock leveler was the clevis assembly. There was no evidence suggesting that Hajack ever repaired the clevis assembly or its component parts.

Hajack filed its motion for summary judgment on count IV of the complaint, denying that it had negligently repaired the clevis assembly and arguing that it was not liable to Clark for his injuries. In response, Clark filed an affidavit of Dr. Willis, who stated that the Hajack employee who repaired the cross-traffic leg chain should have known that the earlier replacement of the clevis assembly created a dangerous condition. Hajack replied that as an independent contractor of Midwest, it had no duty to do more than it was requested to do in repairing a portion of the dock leveler. The trial court entered judgment in favor of Hajack, finding, among other things, that Clark had failed to establish a causal link between Hajack's actions and Clark's injuries.

OPINION

In essence, Clark's theory would hold Hajack liable in negligence for Hajack's failure to discover or report the allegedly dangerous condition of the clevis assembly. Clark argues that Hajack is a dock leveler equipment specialist that performed an inspection of the machinery as part of its repair and therefore owed a duty to act with reasonable care in making the inspection.

Hajack responds by first arguing that its obligation was limited to the terms of the contract to repair, which did not include any repair to the clevis assembly. Hajack contends that if a defendant's negli-

gence is based upon a breach of contract, the scope of the defendant's duty is determined by the terms of the contract. *E.g., Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472 (security service that guarded Chicago Housing Authority (CHA) premises from 9 a.m. to 1 a.m. and was also charged with evaluating security needs of the CHA on a continuing basis was held to have no duty in negligence to tenant who was injured after 1 a.m.; court held that there was no duty to evaluate security needs for periods after its contractually obligated schedule or to inform CHA that additional security should be obtained for those periods); *Perkaus v. Chicago Catholic High School Athletic League* (1986), 140 Ill. App. 3d 127, 488 N.E.2d 623 (defendant league held to have no duty in negligence to injured rugby player who sued under theory that league failed to regulate the play of the games pursuant to defendant's constitution and bylaws; court held that the bylaws did not regulate rugby).

■ The record in this case reveals that Hajack performed the particular repair it was hired to do. Hajack tested the dock leveler's operation and found it satisfactory at that time. Several months later, Clark was injured under circumstances that suggest a possible defect in the clevis assembly. There is nothing of record to show that Hajack was requested to conduct a complete safety inspection of the dock leveler to ascertain whether any part of it might pose a danger.

We do not believe that Hajack became an insurer of the future safety of the dock leveler merely by its general inspection of the machinery pursuant to its repair of the cross-traffic leg chain and lubrication of the machine. Hajack's contractual duties cannot be expanded to include a duty to detect and warn against possibly dangerous conditions to a portion of the dock leveler that was not part of the repair contract.

■ Clark asserts that even if Hajack had no duty under the repair contract to inspect for and report the existence of dangerous conditions, once it set out to inspect the dock leveler it was required to do so with reasonable care. In support of this theory, Clark cites *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769, and the Restatement (Second) of Torts section 324A, at 142 (1965). Section 324A provides:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person ***, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Clark does not claim that Hajack's conduct increased the risk of harm, but he does argue that Hajack undertook a duty owed by Midwest and that Midwest relied on Hajack's inspection. Clark relies on *Nelson Wire*, which applied Florida's doctrine of negligent performance of a voluntary undertaking. In *Nelson Wire* employees were injured when a construction hoist collapsed. They sued their employer's worker's compensation carrier, alleging that the insurer's safety engineers periodically inspected the work site to oversee the employer's practices and equipment. The supreme court held that the insurance carrier gratuitously undertook to provide safety services and had a duty to perform them with reasonable care.

■ We believe that Clark's theory is unsupported by the facts of the pending case. Unlike the situation in *Nelson Wire*, Hajack had no periodic, deliberate presence at the work site and had not undertaken any responsibility for job safety. Had Hajack negligently repaired the cross-traffic leg chain, proximately causing an injury, it would be responsible for its own negligence. But the one-time repair job cannot, in our opinion, become the basis of a negligent undertaking theory of liability where there is no evidence that Hajack voluntarily undertook Midwest's responsibility for the ongoing and future safety of the dock leveler. A Midwest employee had modified the clevis chain assembly on several occasions in the past. Even assuming that the modification created a dangerous condition, there are no facts in the record to create an inference that Hajack negligently undertook a gratuitous duty to discover and report such condition to the party that created the condition. Nor is there any evidence that Midwest depended on such an inspection.

Dr. Willis' affidavit states his opinion that Hajack knew or should have known that the replacement of the clevis assembly created a dangerous condition, but the evidentiary facts in support of such opinion are not set out. Instead, the affidavit simply lists the materials Dr. Willis examined, such as photographs of the scene, safety engineering literature, and the depositions of two people. From these materials, the witness concludes:

"[T]he Hajack service person, Van Bailey, who repaired, tested and inspected the Kelly dockleveler on April 18, 1984, knew or

should have known in the exercise of the skill and knowledge normally possessed by dockleveler service personnel in the community, that the replacement of the clevis mechanism, and the replacement of pins holding the clevis mechanism assembly with a bolt, created a dangerous condition wherein said replacement parts could cause the dockleveler to bind up, thereby causing the dockleveler to suddenly drop from a horizontal position to an incline while being used by employees of Midwest Litho-Type."

■■ It is the plaintiff's responsibility to establish a sufficient factual basis to defeat a motion for summary judgment. (See, *e.g., Carter v. Dunlop* (1985), 138 Ill. App. 3d 58, 69, 484 N.E.2d 1273.) The mere listing of all documents reviewed by an expert is no substitute for summarizing the facts relied upon, with citations to the pertinent passages in depositions and other documents. Otherwise, the court is compelled to scour the record to ascertain whether the expert's conclusory opinion is premised on evidentiary facts. Nevertheless, even if we assume that the expert's opinion is admissible, that Hajack owed a duty, and that there is a factual issue as to what Hajack's personnel knew or should have known as to the significance of the modified clevis assembly, we agree with the trial court that Hajack's acts or omissions with respect to its one repair did not proximately cause Clark's injuries.

The clevis assembly of the dock leveler was functioning properly after Hajack's repair to the cross-traffic leg chain. The machine that had been installed in 1979 and modified by Midwest continued to operate properly for six months after Hajack's repair, and the record indicates that it functioned properly the day after the accident. Although the expert witness tried to establish that the dangerous condition was (Midwest's) replacement of a pin in the clevis assembly with a bolt, and that Hajack should have known of this danger, we find the opinion speculative in its conclusion that the modification would cause "binding," resulting in the malfunction. As long as the clevis assembly was operating and the "defective" condition was not apparent except by the mere fact of the modification, Hajack could not be liable unless we hold it to a duty going far beyond ordinary repairs and attendant inspection. The trial court held that there was no proximate cause, finding causation "remote" and noting that there was no evidence "that there was anything wrong with it at the time (of Hajack's repair)."

We agree that the element of proximate cause is lacking in this case. Moreover, we find it fair to say that Clark has not established

the existence of a legal duty under the facts. As the trial court noted, holding a service person liable for the modifications that the owner makes "is a burden that [the court] can hardly imagine would be fair to place on the service people."

In opposing a motion for summary judgment, plaintiff has "an affirmative duty to bring forth all facts and evidence of a cognizable cause of action" to show a factual basis that would "arguably entitle [him] to judgment." (*Carter v. Dunlop* (1985), 138 Ill. App. 3d 58, 69, 484 N.E.2d 1273, 1281.) We conclude that Clark has failed to do so. Accordingly, we affirm the trial court's entry of summary judgment in favor of Hajack.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.