SAMUEL A. PETTY, JR., Plaintiff-Appellant, v. CHRIS-KARE, INC., Defendant-Appellee.

First District (6th Division) No. 1—92—2750

Opinion filed June 3, 1994.

Bernard R. Nevoral & Associates, Ltd., of Chicago (David L. Cwik, of counsel), for appellant.

Kurt C. Meihofer and Karyn L. Ordower, both of Johnson & Bell, of Chicago (Thomas H. Fegan and Mindy Kallus, of counsel), for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Samuel Petty, appeals from an order granting summary judgment in favor of the defendant, Chris-Kare, Inc., on the plaintiff's complaint for personal injuries.

Petty's complaint alleged that Chris-Kare, a general contractor, negligently placed and maintained an eight-foot-tall dumpster on its property and directed Petty to use the dumpster. Petty was injured while placing a window into the dumpster. At the time of his injury, Petty was employed as a glass and window installer for D&D Installation (D&D). D&D was a subcontractor of Chris-Kare.

At his deposition, Petty testified that he was 5 feet 9 inches tall and weighed approximately 290 pounds at the time of his injury. He had worked for several years in garbage disposal jobs and had used dumpsters similar to the Chris-Kare dumpster "quite often." In fact, he agreed that he was "very experienced" at placing garbage into eight-foot-tall dumpsters and had "put 10,000 windows in those dump-

sters over the years." While he was employed by D&D, Petty used the Chris-Kare dumpster "every day, six days a week," because he and his supervisor drove to the dumpster every day to deposit garbage.

George Polaski, an employee of another Chris-Kare subcontractor, testified that Chris-Kare provided the dumpster for its minimal office garbage and as a convenience for the subcontractors, who otherwise would have to pay to dump their materials elsewhere. Chris-Kare rented its dumpsters from a garbage service, which removed the dumpster and replaced it with the same size empty dumpster on Monday afternoons. Therefore, the dumpster was often quite full on Monday mornings. Chris-Kare employed a "young kid" who was in high school to help "clean up around the dumpster." Nonetheless, there was always some debris on the ground around the dumpster, and Petty admitted that he had to "navigate around this kind of debris" every day in order to reach the dumpster.

Petty testified that, on August 21, 1989, a Monday morning, there was more garbage than usual in and around the dumpster and it was "full to capacity." There were several cardboard boxes as well as pieces of wood and aluminum siding around the dumpster on the ground. However, Petty said there was still room to place more garbage into the dumpster.

Petty was told to throw away several windows on August 21, including a large picture window approximately five feet square with a wooden frame. Petty had thrown glass pieces of this size into the dumpster before without incident and testified that it was not unusual for him to "carry windows of this size over [to the dumpster] and throw them in the dumpster." On August 21, he unloaded the picture window and carried it toward the dumpster with no difficulty. He noticed the cardboard and other garbage beneath his feet, and "kick[ed] it out of the way." He stated that there "probably" was a ladder on the dumpster, although he did not use the ladder.

When Petty reached the dumpster, he cleared a spot on the ground for his feet. He had sufficient room to stand. Therefore, when he reached up to place the glass into the dumpster, both of his feet were flat on clear ground. The debris including the cardboard was approximately one foot deep. In his years of garbage disposal, Petty had placed windows into dumpsters and seen the windows break while going into the dumpsters. He was always able to get out of the way of any falling glass before August 21, 1989. He testified that, based on his training and experience, he knew that he had to clear a sufficient space on the ground so that he could move away from falling glass. However, when asked if he believed he had cleared a

sufficient space on August 21, Petty stated that he "probably ***
went ahead and put the window in *** [and] never thought of it."

Petty reached under the bottom of the window and began to slide
it up the side of the dumpster toward the top of the dumpster. He did
not move his feet. As he was lifting the window, the glass "snapped
right in half," and the top third of the window fell out of the wooden
frame toward Petty. Petty "tried to jump out of the way" of the
falling glass but "the garbage that was on the ground stopped [him]
from getting out of the way." He "pushed away from the window"
but could not move his feet because "then [his] feet were like caught."
Petty was "pretty sure" that, as he was turning away from the broken
window, he tripped on the garbage and was pushed onto the garbage
by the glass. The glass severely cut Petty's left wrist.

Chris-Kare moved for summary judgment, arguing that it did not
owe any duty to Petty. Applying the Restatement (Second) of Torts,
the trial judge found that the material around the dumpster pre-
sented an open and obvious danger and that Chris-Kare owed Petty
no duty. Therefore, he granted summary judgment in favor of Chris-
Kare.

To recover for the injury to his wrist, Petty must prove all the
elements of negligence, including "a breach of a duty owed to him."
(*Wadycki v. Vanee Foods Co.* (1990), 208 Ill. App. 3d 492, 496, 567
N.E.2d 423.) Petty concedes in his reply brief that the dumpster and
the garbage around the dumpster presented an open and obvious
danger. He also concedes that he was not distracted at the time of his
injury. Nonetheless, he argues that Chris-Kare still owed him a duty
of due care.

Both parties rely on the supreme court's interpretation of the Re-
statement sections concerning open and obvious dangers in *Ward v.
K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223. In *Ward*, the
court rejected the traditional rule that a land occupier never owes a
duty to protect an invitee from an open and obvious danger, but also
refused to impose a duty under all circumstances. (136 Ill. 2d at 156.)
Instead, relying on the Restatement, the court "merely recognize[d]
that there may be certain conditions which, although they may be
loosely characterized as 'known' or 'obvious' to [invitees], may not in
themselves satisfy defendant's duty of reasonable care." (*Ward*, 136
Ill. 2d at 156.) The *Ward* court held that "[i]f the defendant may rea-
sonably be expected to anticipate that even those [invitees] in the
general exercise of ordinary care will fail to avoid the risk *because
they are distracted or momentarily forgetful*, then his duty may
extend to the risk posed by the condition." (Emphasis added.) 136 Ill.
2d at 156.

On two recent occasions we applied this clear language from *Ward* to reject claims that *Ward* applied despite the absence of evidence that the plaintiffs were distracted or forgetful at the time of injury. In March 1994, we decided *Auguste v. Montgomery Ward & Co.* (1994), 257 Ill. App. 3d 865, 629 N.E.2d 535. In *Auguste*, the plaintiff was injured on a stopped escalator that had been turned off for use as a stationary " 'up' and 'down' stairway." She walked from a working escalator to the stopped escalator, placed her foot at the top of the stopped escalator, and slipped and fell. The plaintiff argued that she never looked at the escalator and "figured" it would be running. Nonetheless, she was aware of the usual dangers posed by a stationary staircase. We noted that *Ward* imposes a duty of care "where the defendant could have reasonably anticipated that the plaintiff in the exercise of ordinary care would fail to avoid the risk due to distraction." Applying *Ward*, we held that the defendant did not have a duty to warn the plaintiff about the stopped escalator because it was an open and obvious condition and there was no "evidence of a 'distraction' that defendant should have reasonably anticipated." *Auguste*, 257 Ill. App. 3d at 870, 629 N.E.2d at 538.

Similarly, in 1990, we determined in *Wadycki* that, as a matter of law, no duty existed under facts similar to this case. The *Wadycki* plaintiff, a police officer on patrol, noticed some cardboard debris on the ground near a truck trailer. He placed the cardboard into the trailer, climbed a ladder, and placed one foot on loose cardboard in the trailer while attempting to close the trailer doors. He was injured when his foot slipped, causing him to fall. The officer testified that he saw the loose cardboard in the truck and knew that it was on an incline and falling out of the truck when he stepped on it. We held that the "defendants could not have anticipated plaintiff's injury here though the risk of injury was obvious to plaintiff." *Wadycki*, 208 Ill. App. 3d at 498.

Petty cites several cases that either do not apply *Ward* or note facts showing that the plaintiffs were distracted. In *Ralls v. Village of Glendale Heights* (1992), 233 Ill. App. 3d 147, 155, 598 N.E.2d 337, the court cited *Ward* as a nonapplicable case and applied a different body of duty common law. Contrary to Petty's argument, in *Maschhoff v. National Super Markets, Inc.* (1992), 230 Ill. App. 3d 169, 174-75, 595 N.E.2d 665, the court held that a duty applied because the plaintiff might have been distracted. (230 Ill. App. 3d at 174.) Similarly, in the third case cited by Petty, *Sparrow v. Talman Home Federal Savings & Loan Association* (1992), 227 Ill. App. 3d 848, 854, 592 N.E.2d 363, the court held a duty arose because "defendant could have anticipated that [the plaintiff] might fail to avoid [the open and

obvious condition]." Therefore, we find all these cases distinguishable from Petty's claim.

The best support for Petty's position comes from a third district case he cites, *Zumbahlen v. Morris Community High School District, No. 101* (1990), 205 Ill. App. 3d 601, 563 N.E.2d 1228. The *Zumbahlen* majority held that a duty applied even though the plaintiff testified she "knew the [condition] was there and in fact was trying to be careful around it." (205 Ill. App. 3d at 602.) Without extensive analysis, the majority stated: "In light of *Ward*, we believe there existed a genuine issue of material fact in the instant case." (*Zumbahlen*, 205 Ill. App. 3d at 603.) The dissenting opinion explained that the fact the plaintiff was not distracted distinguished the case from *Ward*. (*Zumbahlen*, 205 Ill. App. 3d at 603 (Heiple, P.J., dissenting).) The dissent interpreted *Ward* to mean that no warning sign or other protection is necessary where a plaintiff is fully aware of the dangerous condition; a defendant must only protect distracted or forgetful plaintiffs from an obvious condition.

We find *Wadycki* and *Auguste* controlling of this case and will not apply *Zumbahlen*. Applying the *Ward* test, as explained in *Auguste* and *Wadycki*, we hold that Chris-Kare owed Petty no duty. Petty admitted that he was very experienced in garbage disposal, that he knew the dumpster was full and that garbage was around the dumpster, and that he cleared himself space to work beside the dumpster. He does not dispute that he knew there was garbage around his legs when he lifted the glass. Further, he chose not to use the ladder that he testified "probably" was available to help place garbage in the dumpster. Like the *Auguste* and *Wadycki* plaintiffs, Petty was aware of the very condition that harmed him, yet nonetheless continued his course of action. Thus, as a matter of law, Chris-Kare owed him no duty.

Petty alternatively argues that Chris-Kare owed him a duty of due care because, once Chris-Kare voluntarily provided the dumpster, it was required to maintain the dumpster without negligence. Petty bases his entire argument on one case, *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769. Petty has the burden of proving his contentions on appeal and must "establish a sufficient factual basis to defeat a motion for summary judgment." *Clark v. Hajack Equipment Co.* (1991), 220 Ill. App. 3d 919, 925, 581 N.E.2d 351.

There is no question that "liability can arise from the negligent performance of an undertaking." (*Williams v. Alfred N. Koplin & Co.* (1983), 114 Ill. App. 3d 482, 486, 448 N.E.2d 1042.) Quoting the Restatement of Torts § 323(1) (1934), the court in *B.C. v. J.C. Penney Co.*

(1990), 205 Ill. App. 3d 5, 12, 562 N.E.2d 533, recently explained that " '[o]ne who gratuitously renders services to another \*\*\* is subject to liability for bodily harm caused to the other by his failure, while so doing, to [act with] reasonable care.' "

This liability was explained in *Nelson*. Although *Nelson* was decided by our supreme court, under choice of law rules it applied the law of Florida, and "Florida's doctrine of negligent performance of a voluntary undertaking" to the case. (*Clark*, 220 Ill. App. 3d at 924.) In *Nelson*, several construction workers were injured when a hoist, which was being used as an elevator, collapsed. They sued the insurance company which had insured the construction project, arguing that the insurer's safety engineer had voluntarily inspected the hoist and had given the impression that the hoist was safe. The *Nelson* court stressed that the insurer advertised that its safety engineering services could increase worker safety and that the safety engineer, an elevator expert, frequently and carefully inspected the construction site and the hoist, giving the company detailed reports and recommendations. (*Nelson*, 31 Ill. 2d at 79-82.) Further, while the court determined that reliance was not necessary to show liability under the facts presented, the court noted that the employer used only the safety engineer's opinions, and did not conduct its own safety inspections.

The *Nelson* court stated that, "[b]y undertaking to act defendant became subject to a duty with respect to the manner of performance" and this duty was owed to anyone injured by the voluntary undertaking. (*Lavazzi*, 31 Ill. 2d at 85-86.) The court explained that this duty arose "by operation of law from defendant's own independent and gratuitous course of conduct." (*Nelson*, 31 Ill. 2d at 84.) Thus, the *Nelson* court upheld a jury finding of insurer negligence. In dissent, two judges argued that this liability should be imposed only when a plaintiff has relied on the voluntary undertaking.

Chris-Kare argues that *Nelson* is factually distinguishable from. this case and cites *Lavazzi v. McDonald's Corp.* (1992), 239 Ill. App. 3d 403, 606 N.E.2d 845. The alleged voluntary undertaking in *Lavazzi* was much more tangential than Chris-Kare's act of providing the dumpster, distinguishing the facts of that case from Petty's claim. Nonetheless, the *Lavazzi* court noted that the supreme court recently limited the voluntary undertaking doctrine to a narrow definition of each undertaking on public policy grounds (see *Frye v. Medicare-Glaser Corp.* (1992), 153 Ill. 2d 26, 605 N.E.2d 557), and noted that it should not be applied where the plaintiff did not rely on the undertaking. (239 Ill. App. 3d at 410.) Additionally, in *Clark* (*Lavazzi*, 220 Ill. App. 3d at 924), the court refused to apply the doctrine, in part because the plaintiff did not rely on the undertaking.

Applying these cases to Petty's claim, we hold that Petty has not shown that the *Nelson* duty existed here. As Chris-Kare argues, *Nelson* is factually distinguishable from this case and the policy reasons favoring imposition of a duty in *Nelson* are not present here. The *Nelson* defendant took extensive steps to assure the construction company that its engineer would make the site safe. Also, the engineer was actively and frequently involved in the construction company's activities and specifically directed the company regarding the safety of the hoist. In contrast, Chris-Kare contracted to have the dumpster placed on its property and emptied once a week, but did not take any active role in determining who dumped garbage and when garbage could be dumped. Though Petty testified that a high school student was hired to help clean Chris-Kare's premises, Petty also explained that there was always a great deal of garbage in and around the dumpster on Monday mornings. Thus, Petty was not led to believe the area would be free from debris as the *Nelson* construction workers were led to believe the hoist was safe. We therefore distinguish the minimal actions of Chris-Kare from the actions of the *Nelson* insurer.

Moreover, the applicability of the *Nelson* discussion of Florida law to cases in this State has been narrowed in the years since *Nelson* was decided, most recently by the supreme court in *Frye*. Though the *Nelson* court explained that reliance was not necessary to its finding of duty under the facts presented, as noted in *Lavazzi* and *Clark*, courts now require a showing of reliance by the plaintiff on the voluntary undertaking. Petty has not attempted to show how he relied on the placement and maintenance of the dumpster. Petty testified that he often cleared a path through garbage to the dumpster and that he was accustomed to garbage being on the ground near the dumpster. He did not allege any reliance in his complaint and has not argued reliance to this court. Thus, because the only case cited by Petty, *Nelson*, is factually distinguishable and because Petty has not shown that the law of *Nelson* applies to him, we hold that he has failed to carry his burden of proving this contention on appeal.

For all of these reasons, we affirm the judgment of the circuit court.

Judgment affirmed.

McNAMARA and RAKOWSKI, JJ., concur.