William HAYNESWORTH, Appellant,

v.

D.H. STEVENS COMPANY, Appellee.

No. 92–CV–601.

District of Columbia Court of Appeals.

Argued June 15, 1994.

Decided Aug. 8, 1994.

———————

Marc Fiedler, with whom William P. Lightfoot, Washington, DC, was on the brief, for appellant.

Mary Beth McCormick, Rockville, MD, for appellee.

Before FERREN and KING, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

In a negligence action involving a pedestrian who slipped and fell on a patch of ice in an alley adjacent to an apartment building, a claim was brought against a plumbing company whose employee, five days before the accident, repaired a broken pipe which had leaked water from the apartment building into the alley. The trial court directed a verdict in favor of the defendant plumbing company. Appealing from this ruling, the pedestrian contends the plumber was negligent in failing to notify the management company that water which had escaped from the broken pipe continued to leak into the alley after his repairs. Finding no error, we affirm.

## I.

### Facts

On a January morning in 1990, William Haynesworth experienced car trouble while driving near his mother's apartment on Missouri Avenue, Northwest, in the District. Haynesworth parked his vehicle on Ninth Street and walked up the alley to the back entrance of his mother's apartment building. He called for road service and returned to his vehicle. When the tow truck arrived, Haynesworth returned to his mother's apartment to retrieve an identification card. As he proceeded down the alley toward the tow truck, Haynesworth slipped and fell on an ice patch which had formed from water seeping through a hole in the exterior wall of an adjacent apartment building managed by Fred A. Smith & Company ("Smith"). Haynesworth was taken by an ambulance to the Washington Hospital Center, where he was treated for a fractured left leg.

Haynesworth filed a negligence action [1] against D.H. Stevens & Company ("Stevens"), the plumbing company whose employee made repairs to the broken pipe in the building five days prior to the accident. Because there was no resident manager at the premises, Smith, the property management company, relied upon the tenants to notify it about any maintenance problems within the building. If a tenant complained about plumbing problems, Smith would contact Stevens to perform the repairs. Tenants were also allowed to contact Stevens directly in case of a plumbing emergency. Approximately a week prior to Haynesworth's fall, Stevens received a complaint from a tenant that a boiler in the building was losing water and that the water was leaking from a crawl space into an alley and freezing. A plumber from Stevens responded to the complaint and discovered a broken pipe which had leaked approximately three and a half to four feet of water into the crawl space. The plumber temporarily repaired the broken pipe, and noticed that the water which had already collected in the crawl space was leaking through a small hole in the wall of the building and running into the alley. Although the plumber was aware that water was freezing in the alley, he did not report the problem to either the property management company or the tenants.

At the close of the evidence, the trial judge concluded that no evidence was introduced establishing that the plumber was negligent in his repairs, or that he had breached any duty which he owed to the pedestrian. As a consequence, he granted Stevens' motion for a directed verdict. Haynesworth filed a timely appeal.

---

1. The other defendants in Haynesworth's negligence complaint included Dorothea Voyatzis, the owner of the building located at 5810 Ninth Street, Northwest, and Fred A. Smith & Company, the company which managed the property.

A jury verdict was rendered in favor of the owner and the management company. The instant appeal concerns only D.H. Stevens & Company, the plumbing company.

## II.

### Scope of Review

At the outset, we recognize that a trial court may grant a motion for judgment as a matter of law if "a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue...." Super.Ct.Civ.R. 50(a)(1). Thus, "[a] verdict may be directed only if it is clear that the plaintiff has not established a prima facie case." *Clement v. Peoples Drug Store, Inc.*, 634 A.2d 425, 427 (D.C.1993) (citing *Marshall v. District of Columbia*, 391 A.2d 1374, 1379 (D.C.1978)); *Sastry v. Coale*, 585 A.2d 1324, 1328 (D.C.1991). In reviewing a directed verdict, we "view the facts, as the trial court was required to, in the light most favorable to the non-moving party." *Washington v. A & H Garcias Trash Hauling Co.*, 584 A.2d 544, 545 (D.C.1990) (citing *Bauman v. Sragow*, 308 A.2d 243, 244 (D.C.1973)); *Lenkin–N Ltd. Partnership v. Nace*, 568 A.2d 474, 477 (D.C.1990); *Ceco Corp. v. Coleman*, 441 A.2d 940, 944 (D.C.1982).

## III.

### Appellant's Theory of the Case

Haynesworth contends there was adequate evidence introduced at trial from which a reasonable jury could find negligence of omission on the part of Stevens and therefore, the trial court erred in granting the motion for a directed verdict. In support of his claim, Haynesworth relies heavily upon Sections 323 and 324A of the Restatement, which provide:

> **§ 323. Negligent Performance of Undertaking to Render Services**
>
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

> **§ 324A. Liability to Third Person for Negligent Performance of Undertaking**
>
> One who ... render[s] services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care ..., if

> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS §§ 323, 324A (1965).

Although the Restatement has not been formally adopted by this court, it is clear that the particular concept advanced by Haynesworth is well known and has been readily applied, where appropriate. *See Long v. District of Columbia*, 261 U.S.App.D.C. 1, 11, 820 F.2d 409, 419 (1987). Here, it is conceded that the plumber was not negligent in repairing the broken pipe.[2] Haynesworth instead contends that once the plumber completed his repairs and realized that the water in the crawl space continued to leak into the alley where it was likely to freeze, he was under a duty to notify Smith, the property management company, of this condition so that the problem could be addressed. In essence, Haynesworth claims that the plumber's failure to inform Smith about the water leaking into the alley was the proximate cause or contributed to Haynesworth's fall.

## IV.

### Discussion

It is a familiar principle that a person is liable to another in negligence only if it

---

2. Haynesworth's counsel at trial explained that "the allegation is not that they [Stevens] negligently repaired the pipes."

gently repaired the pipes."

can be shown that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff. *See Powell v. District of Columbia,* 634 A.2d 403, 406 (D.C.1993); *Levy v. Schnabel Found. Co.,* 584 A.2d 1251, 1255 (D.C. 1991). Consequently, a person is "liable to another only when he owes him some duty of care." *Lipnick v. United States,* 717 F.Supp. 902, 904 (D.D.C.1989); *see Williams v. Baker,* 572 A.2d 1062, 1064 (D.C.1990) (en banc); *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99, 99–100 (1928). In a case of this nature, it is critical to determine whether a duty was owed by the alleged tortfeasor to the person claiming injury. Woven into this overall consideration is also the question of reasonable foreseeable risk to be perceived by the actor at the time of the incident. Stated another way, we must ask "whether the injury to that individual [to whom a duty was owed] was reasonably foreseeable to the defendant." *Powell v. District of Columbia,* 602 A.2d 1123, 1133 (D.C.1992) (citations omitted). "[I]t is first necessary to ascertain the scope of the defendant's undertaking, for the scope of the defendant's undertaking determines the scope of its duty." *See Canipe v. Nat'l Loss Control Serv. Corp.,* 736 F.2d 1055, 1061 (5th Cir.1984). This limitation on the foreseeability of risk imposed upon an actor's scope of duty has indeed been recognized by textwriters as the predominant analytical approach. *See* FOWLER V. HARPER ET AL., THE LAW OF TORTS § 18.2, at 655 (2d ed. 1986); *see also* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 53, at 358 (5th ed. 1984).

In this instance, it is undisputed that the property management company customarily contacted Stevens when plumbing repairs were needed at the apartment building. When Stevens received the complaint that a boiler was losing water and that the water was leaking into the alley beside the building and freezing, Stevens dispatched a plumber who found the broken pipe and temporarily repaired it. There is no evidence which shows that Stevens was obligated either by contract or by the usual practice in the plumbing industry to notify Smith about the building's water leak into the alley. While it may have been helpful to report this situation, it appears that repairing the faulty plumbing was the plumber's only legal obligation.[3]

A comparison of this federal circuit's opinion in *Long, supra,* with our own decision in *Munson v. Otis,* 396 A.2d 994 (D.C.1979) (per curiam), is useful. In *Long,* a utility company, which had contracted to repair traffic signal control equipment in the District, was found liable in a wrongful death action when an automobile collision occurred as a result of a traffic signal malfunction. Rejecting the utility company's assertion that it owed no duty to the travelling public to maintain traffic signals in accordance with its contract with the District, the court held that the company contracted to perform services within its field of expertise and that it "acquired a duty to foreseeable plaintiffs [the travelling public] to perform these services with reasonable care." *Long, supra,* 261 U.S.App.D.C. at 10, 820 F.2d at 418. *Munson* involved a plaintiff, a visitor to a residence, who fell through a sheet-rock panel which covered a hole in the first story ceiling of a house which was undergoing renovation. A jury found Munson, the independent contractor who was renovating the house, and the owners of the property jointly liable for the plaintiff's injuries, but the trial court subsequently granted the property owners' motion for a judgment notwithstanding the verdict. On appeal, Munson similarly claimed that he owed no duty to exercise care toward the plaintiff. This court determined that, under those circumstances, Munson "had no reason to believe that someone might suffer injury by failing to recognize that the sheet-rock panel would not hold his weight" and therefore, he owed no duty to

---

**3.** *See Clark v. Hajack Equip. Co.,* 220 Ill.App.3d 919, 163 Ill.Dec. 400, 403, 581 N.E.2d 351, 354 (1991) (defendant's "contractual duties cannot be expanded to include a duty to detect and warn against possibly dangerous conditions to a portion of the dock leveler that was not part of the repair contract"); *Stacy v. Aetna Casualty & Surety Co.,* 484 F.2d 289, 293 (5th Cir.1973) (plaintiff's evidence failed to establish that the defendant owed a legal duty to inspect an ice storage room and "therefore the case should not have been submitted to the jury").

warn the plaintiff. *Munson, supra,* 396 A.2d at 997.

■ We believe this case falls closer to *Munson.* In *Long,* it was reasonably foreseeable that the utility company's failure to repair the traffic signal created an unreasonable risk of harm to members of the travelling public. Moreover, it was understood that the utility company was required *to notify* the District if it was unable to repair the traffic signal control equipment. *Long, supra,* 261 U.S.App.D.C. at 3, 820 F.2d at 411. Thus, the company in *Long* undertook a contractual duty to warn of known risks. The evidence here demonstrates that at the time the plumber discovered the broken pipe, there was approximately three and a half to four feet of water already in the crawl space. Unlike the independent contractor in *Munson,* who had created a dangerous condition, the plumber's actions did not create the situation (water seeping out of the building into the alley and freezing) which resulted in injury to Haynesworth. The dangerous condition was already in existence at the time the plumber responded to the tenant's complaint. There is nothing to suggest that the plumber increased or added to the dangerous condition in the alley when he repaired the broken pipe. Additionally, this dangerous condition was not hidden from the general public's view. The record reveals that the water could be seen running from the building into the alley where it was freezing. Under these circumstances, we are unable to conclude that the plumber owed a duty to warn either Smith, the management company, or Haynesworth about the hazardous condition in the alley.

■ Notwithstanding Haynesworth's claim that the plumber's inaction increased the risk of harm to him, we note that it was the property manager's duty, not the plumber's, to maintain the common areas of the building. *See Graham v. M & J Corp.,* 424 A.2d 103, 105 (D.C.1980) ("[A] landlord has a duty to use reasonable care to keep safe those common areas of the building retained under his control"); *Beck v. Shannon and Luchs Co.,* 174 A.2d 199, 200 (D.C.1961); *Pessagno v. Euclid Inv. Co.,* 72 App.D.C. 141, 143, 112 F.2d 577, 579 (1940). Smith's vice-president

admitted during his testimony that Smith was responsible for removing any snow or ice on the property. With this responsibility, Smith should have had some mechanism in place which would have provided notice of the situation in the alley rather than attempting to delegate its duty to the plumber. By not having an agent on the premises, Smith, in effect, attempted to shift its duty to safeguard persons from perils in the common areas of the building onto the plumber. Absent some express understanding between Smith and Stevens, we are not persuaded by the argument that the plumber entered onto the property as a plumber, but left as a maintenance man for Smith.

While we venture no opinion on what a different set of facts may warrant, under these circumstances, the plumber had no duty to warn Smith about the dangerous condition in the alley and therefore, Stevens could not be held accountable for Haynesworth's injuries. Because Haynesworth has relied heavily upon Restatement principles, we expressly affirm the trial judge's ruling that appellant failed to satisfy any subsection of the Restatement earlier quoted. Accordingly, the motion for a judgment notwithstanding the verdict was properly denied and the judgment of the trial court is

*Affirmed.*